Cited in 9 S. & R., 354.
Referred to in 28 Pa., 105; 37 Pa., 18.
Obsolete since the Wills Act, of 1833.


## AT NISI PRIUS, AT WEST CHESTER,

### OCTOBER ASSIZES, 1793.

#### CORAM M'KEAN, CHIEF JUSTICE, AND YEATES.

# John Denn, lessee of Ezekiel Griffith *against* Henry Woodward, Josiah Garret, George Hoopes and Abraham Hibbart.

Testator devises to his son E. his heirs and assigns, 7 acres of land, and to his wife C. and son J. all "the residue of his estate, real and personal, if "either of his sons shall die unmarried, and without lawful issue, then the "survivor to enjoy the estate of his deceased brother, and after the decease "of his said wife, the said J. or E., or the survivor of them, shall and may for "them, their heirs, executors and assigns; under the above limitations, enter "and take possession of my said real estate, &c." The widow assigned her interest to J. who afterwards suffered a common recovery, married and died without issue. Resolved, that if J. took an estate tail, it was barred by the recovery; if an estate in fee simple, both events of his dying unmarried and without issue, must concur to vest the estate in E.

BENONI GRIFFITH being seized of the lands in question, *inter alia,* made his last will in writing dated 5th March 1739. He begins it thus: "As touching such worldly estate where-"with it hath pleased God to bless me in this life, I give, "devise and dispose of the same in the following manner and "form." "I give to my eldest son Nathan 5l., to be levied "out of my estate, and to be paid in two years after my de-"cease. *Item,* I give to my daughter Hannah 20l., to be "levied out of my said estate, and to be paid in one year after "my decease. *Item,* I give to my youngest son Ezekiel, (the "lessor of the plaintiff,) seven acres of land, part of the land "I live on, lying, &c. to him, his heirs and assigns forever. "*Item,* I give to my three married daughters, Elizabeth, "Sarah and Rachel, 5s. each, to be levied out of my said "estate, and to be paid in one year after my decease. Lastly, "I give and bequeath to my wife Catharine, and my son John, "all the residue of my estate, both real and personal, lands, "tenements, goods, chattels, &c. the profits of which, (so long

[Griffith's Lessee *v.* Woodward et al.]

"as they agree to live together,) to *be equally divided "between them, after the arrears of incumbrance on "said estate is discharged by them; but if it shall so happen "that they may not content themselves to live together "thereon until the incumbrances shall be done away as above- "said, that then my said wife Catharine shall have power to "demise and lease out the estate towards discharging the "same, during her natural life, or so long as she shall continue "a widow, &c." "And it is likewise ordered and willed by "me, that if either of my said sons, John or Ezekiel, shall "happen to depart this life unmarried and without lawful "issue, that then the survivor of them is to enjoy all the es- "tate of his deceased brother, which is by me herein be- "queathed and devised to them or either of them. And if "my said wife after my decease shall marry, and so alter her "condition, that then she may only claim her thirds of the "profits of my estate, &c. And after the decease of my said "wife, my said sons John or Ezekiel, or the survivor of them, "shall and may for them, their heirs, executors and assigns, "under the above limitations, enter and take possession of "my said real estate, &c."

The testator died in 1760, and his will was duly proved. Catharine, the widow, assigned and released all her interest and claim in the land to John the devisee, who afterwards suffered a common recovery of his part of the lands in May term 1773. John married, and sold and conveyed part of the lands in his life time, and died without lawful issue, having first made his will, and thereby authorised his executors to sell the rest of the lands.

The question was, whether the lessor of the plaintiff was entitled to the lands, his brother John having died without issue?

On the part of the plaintiff it was said, that John took a conditional fee simple in the lands devised to him, and that Ezekiel was entitled by way of executory devise. The general introductory clause shews the testator's intention to dispose of all his interest in both the real and personal property. The word estate includes all the testator's interest. 6 Mod. 110. 12 Mod. 596. 5 Burr. 26, 139. All the rest and residue of my estate passes a fee. 2 Ld. Ray. 1324. 3 Wms. 295. So of the residue and remainder of my effects both real and personal. Cowp. 307. The pecuniary legacies too, are charged upon the whole estate. And whenever there is a devise of lands, on payment of money, not payable out of the annual profits, a fee passes. So of a general sweeping clause. 3 Burr. 1622. In the latter clause of the will it is also said, that John and Ezekiel, or the survivor of them after the decease of the widow, for them, their heirs, &c. shall *enter and take possession, &c. which clearly would carry a fee. The great and general intent of the tes-

[Griffith's Lessee *v.* Woodward et al.]

tator must controul the operation of the words. The plaintiff insists, that he intended his two sons John and Ezekiel, should enjoy the absolute interest in his lands, subject to one contingency, their having issue. In defect whereof the lands were to go wholly to the survivor. The executory devise over is not too remote. It is to take effect within the compass of lives in *esse*, and the law will supply to issue, the words "then living," the remainder being limited to the "survivor." The word "unmarried," is tautologous. It is evident there could be no "lawful issue" without a lawful marriage. So it is held, Cro. Car. 154, that "unmarried and "without issue," means only not having issue. [S. C. more fully stated W. Jon. 205.] Devise to trustees in fee: if B attains 21, or has issue, to B and the heirs of his body; but if B dies before 21, and without issue, then over. B attains 21 and dies without issue. Decreed, that an estate tail vested in B at 21, or on having issue, and the limitation over a remainder, which takes place on failure of issue of B. 1 Vez. 243.

For the defendants it was insisted, that if John took an estate in tail, under the devise from his father, then it was barred by the common recovery, and the surrender of the widow made a good tenant to the *præcipe.* Shep. Touch. 44. Cro. El. 718.

If John took an estate in fee in the lands, then both events of his dying unmarried and without issue, must take place before the estate could be divested. These are the express words of the will, indicative of the testator's intentions. Devise to one in fee, and if he dies in his minority and without issue, then over; the estate vests on his coming of age. Arg. Hard. 148, but no opinion given by the court. Devise to his son and heir, and if he dies before 21, and without issue of his body then living, then remainder over. Held that devisee took an estate in fee, and his sale when of age is good, for the estate tail is limited to commence on a subsequent contingency. 1 Sid. 148. Devise of lands to his son and his heirs, and in case his son die before he attain to 21, or have issue of his body living, then to F C; the son lives to 28, but dies without issue. Adjudged that the land shall go to the heir of the son. Pollex. 645. Devise to A in fee, but if he dies under age, or unmarried, and without issue, then over; all the events must concur to defeat the estate. 2 Stra. 1175. Devise in fee, but if he died unmarried, or in his minority, or without issue, then over; if the devisee died of full age, though unmarried and without issue, the estate shall not go over. 1 Wils. 140. [S. C. 3 Atky. 390, but stated differently.] *In these three last cases the word "or" has been construed "and," to effectuate the manifest general intention of the testator. So in 3 Atky. 193. And for the same purpose in 1 Vez. 15, "and" was construed "or," and the words of a will were transposed. In our case there is [*319

[Griffith's Lessee *v.* Woodward et al.]

no occasion for the exercise of such power. The words are clear and explicit, and fully convey the testator's ideas. Devise of lands to his wife, till his son came to 21, and then that his son should have the land to him and his heirs; and if he dies without issue before his said age, then to his daughter and her heirs, this is a good contingent, or executory devise to his daughter. If the son lives to 21, though he dies without issue, or leaves issue, though he die before 21, yet the daughter is not to have the lands, because he is to die without issue and before 21, or else the daughter cannot take. 1 Equ. Ca. Ab. 188, pl. 8. Cites 2 Rol. Rep. 197, 217. Palm. 132. The intent of the testator shall govern, and must be collected from the will itself. Perk. § 555.

By the court. If the words of the devise (Vide Cro. Jac. 695. Dyer 330, 331. Cro. El. 525,) should be supposed to give an estate tail to John, then clearly the issue and remainders were barred by the recovery had in 1773. If he thereby took an estate in fee simple, according to the cases cited, [and Moor 464,] then it is to be considered, whether the failure of issue on his part, vests the lands in his brother Ezekiel. The intention of the testator is the great governing rule, since a man may devise his lands as he pleases, if his disposition of them be consistent with law. In construing a will, no word is to be rejected, which is not repugnant to the general intent. Courts of justice will transpose the clauses of a will, and construe "or" to be "and," and "and" to be "or," only in such cases when it is absolutely necessary so to do, to support the evident meaning of the testator. But they cannot arbitrarily expunge, or alter words, without such apparent necessity. In the will before us, the sense of the testator is clear and entire from the words he has used. He probably intended to tempt his sons to marry, and therefore subjected their lands to that condition. Would it be reasonable, or consonant to their father's meaning, if either of them formed such a connection, that he should not have it in his power to make a provision for his wife, in case she survived him? The case in Cro. Car. 154, is of a condition precedent to the party taking the estate; and it is to be noted there that the *habendum* expounded the latter clause. It is mentioned in 2 Stra. 1175, to be considerable, that the case there was not a condition pre *cedent, but the proviso was to destroy an estate devised by the former words in fee.

*320]

This case is as strong as that in 1 Sid. 148, and much stronger than those quoted from Pollex. 645, 2 Stra. 1175, and 1 Wils. 140, where the court found themselves under the necessity of construing "or" as "and." No such necessity subsists here; and following the plain words of the will, as well as the precedents, we conceive, that the circumstances of John's dying unmarried, and also without issue, must have concurred to vest the estate in Ezekiel the brother: conse-

[Griffith's Lessee v. Woodward et al.]

quently, he is not entitled to recover. But if the plaintiff's counsel should, on further consideration, think that the court is mistaken, they will have an opportunity of moving the point again in bank.

Verdict *pro def.*

Messrs. Blair, Porter and D. Moore, *pro quer.*
Mr. J. Ross, *pro def.*

The plaintiff's counsel acquiesced herein, and did not stir the question again, on the return of the *postea.*

Cited in 16 Pa., 341.