## In re Estate of Ruth Martin, deceased.    E. M. Sayers' Appeal.

*Will—Legacy—Condition.*

Testatrix charged a legacy to her grandson on a farm which she gave to her daughter, and directed that it should " be paid to him personally when he shall come for it, but should he never come for it, then I direct it to be divided among my other legatees equally." At the time the will was made the grandson had removed to the West, and testatrix had heard a rumor that he was dead, and was in doubt whether he was living. Five months after testatrix's death the grandson came from California to Pennsylvania and demanded payment from the daughter to whom the farm had been devised, and from the administrator c. t. a. of the testatrix. Neither

the administrator nor the daughter had funds to pay him.  He then sold and assigned the legacy to S., and returned to his home.  Subsequently the land upon which the legacy had been charged was sold.  *Held*, (1) that the grandson had sufficiently complied with the requirements of the will by making the demand which he did for the payment of the legacy; (2) that after such demand his right to the legacy became fixed; (3) that a good title to the legacy passed by the assignment.  Stover's Appeal, 77 Pa. 282, distinguished.

Argued Oct. 8, 1896.  Appeal, No. 159, Oct. T., 1896, by E. M. Sayers, from decree of O. C. Green Co., June T., 1887, No. 15, dismissing exceptions to auditor's report.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Reversed.

Exceptions to auditor's report.  Before DICKEY, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*James E. Sayers*, for appellant.—It is a rule of interpretation that in doubtful cases estates are held to be vested rather than contingent: Peterson's App., 88 Pa. 400; 2 Cooley's Blackstone, p. 513.

*A. A. Purman*, for appellee.—This legacy is not a vested one but a mere contingent legacy: Gilliland v. Bredin, 63 Pa. 393; Fairfax's App., 103 Pa. 166; Evans' Lessee v. Davis, 1 Yeates, 332; Fearne on Rem. 149; Stover's App., 77 Pa. 282; Campbell v. McDonald, 10 Watts, 179.

The gift could only vest in the legatee by his coming for it and having it paid to him personally.  He cannot waive the conditions by any act of his whatever, and all acts of his, save coming for it and having it paid to him personally, are invalid.

OPINION BY MR. JUSTICE FELL, November 9, 1896:

The controversy in this case grows out of the following clause of the will of Ruth Martin: " Third, I give and bequeath to my grandson A. M. Vale, $1000.00 to be and remain in the farm whereon I reside to be paid to him personally when he shall come for it, but should he never come for it then I direct it to

be divided among my other legatees equally hereafter mentioned." In the same clause the testatrix directed that her daughter, Mary Riggle, should take the farm on which the legacy was charged at a valuation to be fixed by an appraisement, but provided that if it was not taken by her it should be sold and the proceeds divided among a number of legatees. Her daughter declined to take the farm, and it was sold under proceedings in the orphans' court. Several years before the date of the will A. M. Vale removed to the west, and there was a report in the neighborhood in which he had lived in this state that he was dead. The testatrix, his grandmother, had heard this report, and at the time of the execution of the will she was in doubt whether he was living. She died in October, 1881, two years after the date of her will. In February, 1882, A. M. Vale, having heard of the provisions of the will, came from California to Pennsylvania for the purpose of collecting the legacy. He demanded payment of Mary Riggle, on whose land if she took the farm the legacy was made a charge, and of the administrator c. t. a. of the estate. Neither of these parties at the time was in possession of funds with which to pay him. After remaining here a few weeks he sold and assigned the legacy to E. M. Sayers, the appellant, and returned to his home in California, and has not since been in this state. It does not appear when Mary Riggle finally refused to take the farm at the valuation fixed. An appraisement was made, and negotiations between the parties were pending for some time; and upon their failure to agree, proceedings to effect a sale were commenced in June, 1885. Notice of these proceedings was served upon the appellant as assignee of Vale.

Upon these facts the learned auditor found as matter of law that the legacy was not assignable, as it was contingent, and the condition upon which it would vest had not been performed; that the demand made by Vale was insufficient, and that he must now come personally for the legacy to the party authorized to pay from the proceeds of the sale of the farm, and he directed that the amount of the legacy should be set apart to be paid to Vale, and that in the event of his not coming and receiving it personally within six months from the confirmation of the auditor's report, the sum set apart should be distributed to the other legatees. His report, except the requirement as to the time

within which Vale should appear and make demand, was confirmed by the court.

This finding cannot be sustained. The case is not governed by Stover's Appeal, 77 Pa. 282. The difference in the wills is sufficient to indicate different intentions on the part of the testators, and in Stover's Appeal no demand had been made for the annuity. It is unnecessary to consider whether the legatee had a vested interest in the legacy at the death of Mrs. Martin, as we think that the conditions upon which the legacy became payable were complied with by him. The evident intention of the testatrix was that her grandson, if living, should receive $1,000 of her estate. She had reason to suppose that he was dead, or that if living he might never return to receive her gift. She gave effect to her intention by providing that the legacy should be a charge upon the land which she desired her daughter to take, and to be paid to her grandson if he came for it, and by a bequest over if it should be unclaimed by him. He came within five months of her death and claimed the legacy. This claim was made to the administrator and to the daughter to whom the land was to go. These were the proper persons of whom to make demand. They were unprepared to pay. No duty rested upon the legatee to wait indefinitely or to cross the continent again to make demand at the particular time when in the course of administration the fund was ready for distribution. He did all that he was required to do, and all that it was intended that he should do. He came and demanded the legacy. His right to it then, if not before, was fixed, and he could deal with it as he pleased. It follows that the assignment by Vale was valid, and that the appellant is entitled to the amount of the legacy, with interest from October 12, 1882. We see no reason why any part of the expenses of the audit should be deducted from the legacy. The appellant has not been in fault in asserting what we regard as a just demand, and the whole expense of the audit should be paid from the general fund.

The order of the court of December 31, 1895, is reversed and set aside, and the record is remitted in order that distribution may be made in accordance with this opinion.