| | | |
|---|---|---|
| 213 | | 93 |
| 31 SC | | 154 |
| 213 | | 93 |
| 216 | | 2533 |
| 213 | | 93 |
| d218 | | 140 |

## Holbrook's Estate.

*Trusts and trustees—Restraint of marriage—Condition—Limitation.*

Where a cestui que trust is given the income of a fund "during the term of her natural life, or so long as she remains unmarried," with a gift over "in case of her death or marriage," the gift is upon a limitation in favor of the cestui que trust during the period she remains unmarried, and is valid. Such a provision is not to be construed as an unlawful condition in restraint of marriage.

In Pennsylvania the right of a man to do as he will with his own has always been liberally construed.   Accordingly, a donor, not under any obligation to give, may give with such conditions as he pleases, subject only to the restriction that the conditions shall not be clearly illegal.   Thus a man may not settle his own property on himself so as to keep it out of the reach of his creditors, for that would lead directly to fraud.   But a parent or other person, not bound to give at all, may give on a spendthrift trust though the gift is thus placed beyond the reach of the donee's creditors. In considering any restriction there is no presumption of illegality.   On the contrary, the presumption is in favor of innocence and validity.

Argued May 24, 1905.   Appeal, No. 81, Jan. T., 1905, by Helen Morton Bunker, from decree of O. C. Phila. Co., April T., 1903, No. 578, sustaining exceptions to adjudication in Estate of Margaretta R. Holbrook, deceased.   Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ.   Affirmed.

Exceptions to adjudication.

The testatrix by will directed as follows :

" I give and bequeath to my niece Helen Morton, the interest on the sum of $30,000, the said $30,000 to be held in trust by the Philadelphia Trust, Safe Deposit & Insurance Company for her use, she to receive the net income arising therefrom paid semi-annually during the term of her natural life, or so

long as she remains unmarried.   In case of her death or marriage I direct that half of the principal be given to the Society for the Prevention of Cruelty to Animals, and the other half to the Society for the Prevention of Cruelty to Children."

The niece married in 1904.

The adjudicating judge, PENROSE, J., held that the bequest was for life upon condition of forfeiture in case of marriage; that the condition was void because against the policy of law, and that the niece, notwithstanding the marriage, continued entitled to the income.

The court in banc held that there was a limitation in favor of the niece during the period of her nonmarriage which was valid.

*Error assigned* was decree sustaining the exceptions to the adjudication.

*John G. Johnson,* for appellant.—We submit that this court has held, and that the law of Pennsylvania beyond doubt is as has been thus held, that a gift of personalty for life upon condition that, in case of marriage generally of a spinster, is contrary to the policy of the law.

The reason of the policy is that a gift for life upon condition of divestiture or forfeiture in case of marriage generally tends to immorality.

*N. Dubois Miller,* with him *John J. Wilkinson* and *Joseph Mellors,* for appellees.—The exact case has been decided in In re King's Trusts, 29 Law Rep. Irish, 401.

For further authorities, see the following : Andrew v. Andrew, 1 Coll. 686 ; Heath v. Lewis, 3 DeG., M. & G. 953.

OPINION BY MR. CHIEF JUSTICE MITCHELL, October 30, 1905:

In Pennsylvania the right of a man to do as he will with his own has always been liberally construed.   Accordingly, a donor, not under any obligation to give, may give with such conditions as he pleases, subject only to the restriction that the conditions shall not be clearly illegal.   Thus a man may not settle his own property on himself so as keep it out of the reach of

his creditors, for that would lead directly to fraud. But a parent or other person, not bound to give at all, may give on a spendthrift trust though the gift is thus placed beyond the reach of the donee's creditors.

In considering any restriction there is no presumption of illegality. On the contrary, the presumption is in favor of innocence and validity. The particular restriction which we have in this case belongs to the class known in general terms as in restraint of marriage, and is claimed to be void as against the policy of the law. The general rule must be conceded. But it has no sound basis, either historically or logically, as is apparent from the various origins assigned to it, and the refinements, subtleties and inconsistencies in its application. The old lawyers used to say there were three favorites in the law, life, liberty and marriage, and Coke attributes the origin of the rule to this favor. Other authorities find its origin in the civil law, others again in the canon law, and finally in some of the more modern cases it is based on the policy of the law for the promotion of morality, which is certainly a farfetched and unsubstantial reason in view of the admitted exceptions. Thus, for example, it is difficult to see why such a restriction tends to immorality in a gift of personalty but does not in a gift of realty, or if the divestiture of an estate by marriage has the same tendency why a limitation of the estate to a continuance unmarried should not. Yet these distinctions are as firmly settled as any in the law : Lancaster v. Flowers, 198 Pa. 614 ; Hotz's Estate, 38 Pa. 422. The curious will find this subject learnedly discussed in the argument of Mr. Hare and the opinion of KENNEDY, J., in McIlvaine v. Gethen, 3 Whart. 575, and the opinion of Chief Justice GIBSON in Com. v. Stauffer, 10 Pa. 350.

Nor does the rule stand any better considered logically. It started apparently with a prohibition of all restrictions against liberty of marriage : McIlvaine v. Gethen, 3 Whart. 575. Distinctions and exceptions one after another sustained prohibitions which went merely against time or place, or particular persons, conditions with a gift over on breach, conditions in a gift of land, and finally the distinction between conditions subsequent, working a divestiture, and conditions limiting the estate given. This last distinction is logical

enough, for where there is an estate given and the condition is held void there is still the estate which may continue, while where the estate itself is to last only so long as the condition is fulfilled there is nothing left after the breach. But while this distinction is logical it is dry technical logic with no basis of substantial reason for application in the affairs of life. It is a reproach to the law that of two donors intending to do exactly the same thing one shall succeed and the other fail as a violator of law merely because one scrivener knew what he was about and wrote "so long as the donee remains unmarried," and the other was ignorant or careless and wrote "for life if so long the donee remains unmarried:" Hoopes v. Dundas, 10 Pa. 75.

So strongly have the courts of Pennsylvania felt the undesirability of interference with the right of free disposition of property by the rule invoked in this case that the steady tendency has been to recognize and encourage exceptions which substantially eat out the rule itself. We share the views which have produced this result, and while we will recognize and follow the adjudicated cases which may be properly regarded as having settled rules of property, yet we are not disposed to enlarge the scope of the principle or to apply it to new and questionable cases.

The present controversy arises over the legacy of the testatrix to the appellant of the income of a fund "during the term of her natural life, or so long as she remains unmarried," with a gift over "in case of her death or marriage." The primary rule is to give effect to the intention of the testatrix, and the presumption is that the intent was lawful. The form in which she expressed her will is unimportant except as indicating her intent. There is nothing in this will clearly indicating an intent to prohibit marriage. The words are equally appropriate to express an intent to supply an income to the legatee so long as she was unmarried and presumably dependent on her own exertions for her maintenance. This is a perfectly lawful intent though its practical effect may be to discourage marriage. Even regarding the language of the gift as ambiguous in being equally capable of two constructions, we must give it the one that will preserve the testatrix's right to dispose as she pleased of her property.

There was a gift over on the happening of death or marriage. In Cornell v. Lovett's Exr., 35 Pa. 100, and Mickey's Appeal, 46 Pa. 337, restrictions much more clearly conditions subsequent divesting the legacies, than that in the present case, were expressly held to be valid.

The decree is affirmed.