482 A.2d 1001

Frederick S. TRUXAL, and Edna B. Truxal, His Wife, Appellants at No. 938 Pittsburgh, 1982,

v.

Donald E. TRUXAL, Alias Dictus, D. Eugene Truxal, and Nancy Truxal, His Wife, Robert R. Truxal, and Martha Lou Crothers, All of the Heirs of J.R. Truxal, Deceased.

Appeal of Donald E. TRUXAL, Alias Dictus, D. Eugene Truxal and Nancy Truxal, His Wife, at No. 971 Pittsburgh, 1982.

Superior Court of Pennsylvania.

Submitted July 10, 1984.

Filed Sept. 28, 1984.

John W. Pollins, III, Greensburg, for Frederick Truxal, et al., appellants (at No. 938) and appellees (at No. 971).

Donald J. Snyder, Jr., Greensburg, for Donald Truxal, et al., appellants (at No. 971) and appellees (at No. 938).

Before ROWLEY, HESTER and ROBERTS, JJ.

ROBERTS, Judge:

These are cross-appeals taken from a judgment entered in a three-count action to quiet title. We affirm the judgment in favor of plaintiffs on Count I and affirm the judgment in favor of defendants on Counts II and III.

### Count I

The parcel of land at issue in Count I is located in Unity Township, Westmoreland County, as are the parcels at issue in Counts II and III. Its former owner, J.R. Truxal, died in 1934, leaving a will which provided:

"I give and bequeath to my sons, Frederick S. Truxal, Robert R. Truxal, and A.N. Truxal, or their heirs, at the death of my beloved wife, the tract of land ... on condition that Robert R. Truxal pay to Frederick S. Trux-

al, the sum of $300.00 within two years from the date of death of my beloved wife."

J.R. Truxal's wife died in 1938, and Robert Truxal did not pay plaintiff Frederick Truxal in accordance with the "condition" set forth above. Plaintiffs, in Count I of their Complaint, claimed that payment by Robert Truxal was a condition precedent to his entitlement to a share of the property. The Court of Common Pleas of Westmoreland County agreed, and held that "[u]pon the failure of the condition precedent, the undivided one third interest of Robert R. Truxal was equally divided between [plaintiff] Frederick S. Truxal and A.N. Truxal." *

Defendants, who are the heirs of Robert R. Truxal, maintain that Robert R. Truxal had an interest in the property which vested automatically upon the death of J.R. Truxal, and that it was thus plaintiffs' burden to commence an action to divest Robert R. Truxal of his interest for his failure to make the payment of $300. According to defendants, plaintiffs should have commenced such an action within either twenty years (see 20 Pa.C.S. § 3554) or twenty-one years (see 42 Pa.C.S. § 5530) after the expiration of the period prescribed for payment in J.R. Truxal's will. The period for payment expired in 1940, two years after the death of J.R. Truxal's wife, who died in 1938. Because the present action was not commenced until March 19, 1979, defendants urge that the action should have been deemed untimely, by at least eighteen years, if not nineteen.

Testator J.R. Truxal's clear intent in conveying the 27-acre tract "on condition that Robert R. Truxal pay ... within two years ..." was to attempt to assure that Robert Truxal fulfilled his financial obligations to his brother, plaintiff Frederick Truxal. Testator's designation of a specific time-frame for performance "is a circumstance indicating that it is a condition precedent," *Thompson Estate*, 304 Pa. 349, 353, 155 A. 925, 926 (1931), which makes us certain

---

* A.N. Truxal's share of the property, an undivided one-half interest, was purchased by plaintiffs and by Robert Truxal and his spouse. Each couple acquired a one-half share of A.N. Truxal's one-half interest, thus giving plaintiffs an additional one-fourth interest in the property.

that testator intended that Robert Truxal take no interest in the 27-acre parcel if he did not fulfill his obligation.

■ Defendants suggest that the entire gift of the 27-acre parcel should be deemed to have failed upon Robert Truxal's nonperformance, and that the parcel should be divided according to the law of intestate succession. We agree with the court of common pleas that the controverted portion of decedent J.R. Truxal's will is properly construed to constitute a residuary clause, whose beneficiaries other than Robert Truxal are to share in the portion of the bequest to Robert Truxal which failed. See 20 Pa.C.S. § 2514(11). As the court noted, "[t]o hold otherwise would take any sanction away from Robert R. Truxal's failure to pay the $300.00 to Frederick within two years of the date of [the death of J.R. Truxal's spouse]." Accordingly, the judgment in favor of plaintiffs on Count I is affirmed.

## Counts II and III

Titles to the parcels at issue in Counts II and III are controlled by the same written instruments and the same statutory provisions. By deed absolute on its face, executed on March 28, 1960, Robert Truxal and his spouse conveyed an undivided one-half interest in the parcels to plaintiffs, who owned the other one-half interest in the parcels. On the same day, in a separate written instrument captioned a "Trust Agreement," the grantors and the grantees stated that the conveyances were intended to be made "in trust for [Robert Truxal and his spouse]." Under the terms of the Trust Agreement, Robert Truxal and his spouse were to pay plaintiffs $3500 (with interest) in monthly installments. The agreement required plaintiffs to reconvey the undivided one-half interests to Robert Truxal and his spouse on their successful completion of the payment schedule, but authorized plaintiffs "to terminate the trust erected by this agreement and divest the equitable title resulting from this agreement and thus become owners in fee simple of said real estate" upon any default in payment.

The "Trust Agreement" was not acknowledged and recorded.

Counts II and III alleged, and it is not disputed, that only intermittent installment payments had been made, and that all payments had ceased as of December 1968. On April 16, 1979, defendants filed preliminary objections to Counts II and III in the nature of a motion to strike, which averred that the transaction of March 28, 1960, constituted a mortgage, and that "[t]he sole remedy available to the Plaintiffs in order to foreclose the equity of redemption of the Defendants is an action in Mortgage Foreclosure."

On September 21, 1979, the court of common pleas dismissed the preliminary objections and directed defendants to file a responsive pleading. Defendants did so on October 11, 1979, by filing answers and new matter to each count of the Complaint. In new matter, defendants averred that because of the "defeasance clause" contained in the Trust Agreement of March 28, 1960, the relationship between the parties to the transaction of that date was "one of Mortgagor and Mortgagee and the rights of the Plaintiffs in the property are subject to an equity of redemption which cannot be extinguished by an Action in Quiet Title." Plaintiffs filed replies to the new matter, and averred that defendants' assertion of a right of redemption was time-barred. On motion for summary judgment, the court sustained defendants' claim and thus directed entry of judgment in favor of defendants on Counts II and III.

Plaintiffs contend that defendants first asserted a right of redemption on October 11, 1979, and that the assertion was untimely under the Judicial Code, 42 Pa.C.S. § 101 et seq. Plaintiffs read the Judicial Code to have required the assertion of the right by June 27, 1979, three and one-half months prior to the date on which the right of redemption was allegedly first asserted.

Section 5526(3) of the Judicial Code provides:

"The following actions and proceedings must be commenced within five years:

\* \* \* \* \* \*

An action to enforce any equity of redemption or any implied or resulting trust as to real property."

42 Pa.C.S. § 5526(3). This section of the Code was enacted by the Judiciary Act of 1976, Act of July 9, 1976, P.L. 586, § 2, and was made effective as of June 27, 1978. See Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202. Also made effective June 27, 1978, was section 25 of the Judiciary Act of 1976, which provides:

"Any civil action or proceeding:

(1) the time heretofore limited by statute for the commencement of which is reduced by any provision of this act; and

(2) which is not fully barred by statute on the day prior to the effective date of this act; may be commenced within one year after the effective date of this act, or within the period heretofore limited by statute, whichever is less, notwithstanding any provisions of Subchapter B of Chapter 55 of Title 42 (relating to civil actions or proceedings) or any other provision of this act providing a shorter limitation."

Act of July 6, 1976, P.L. 586, § 25(a). Under prior law, an action "to enforce any equity of redemption, *after re-entry* made for any condition broken," had to be brought within five years after accrual. Act of April 22, 1856, P.L. 532, § 6, 12 P.S. § 83 (1953) (emphasis supplied). Our Supreme Court has interpreted prior law as follows: "[T]he words 'to enforce an equity of redemption' ... are confined to such an equity 'after re-entry made for any condition broken,' and have no application to the equity of redemption of a mortgagor." *Ballentine v. White*, 77 Pa. 20, 26 (1874).

In light of prior law, as interpreted by our Supreme Court, it must be concluded that section 5526(3) of the Judicial Code does, indeed, effect a reduction of "the time heretofore limited by statute for the commencement of [a proceeding]" for purposes of section 25 of the Judiciary Act

of 1976. Plaintiffs are thus correct in contending that defendants were required to assert a right of redemption by June 27, 1979, the date which was "one year after the effective date" of the Judicial Code.

■ Plaintiffs are incorrect, however, in contending that defendants did not assert their right until October 11, 1979, when defendants filed their answers and new matter. On April 16, 1979, defendants filed the preliminary objections which sought the dismissal of Counts II and III on the specific ground that plaintiffs had to proceed through an action in mortgage foreclosure "in order to foreclose the equity of redemption." This assertion, which was made well within one year of the effective date of the Judiciary Act of 1976, differs from the subsequent assertion contained in new matter only in procedural context. Had defendants' preliminary objections been dismissed and defendants been directed to file a responsive pleading prior to June 27, 1979, defendants surely could have timely filed the new matter which plaintiffs concede to be sufficient. We hold, therefore, that defendants' assertion of their right of redemption was not untimely under the Judicial Code.

Plaintiffs additionally contend that the defendants' assertion of a right of redemption is barred by the "Defeasance Act," Act of June 8, 1881, P.L. 84, § 1, amended by Act of April 23, 1909, P.L. 137, § 1, 21 P.S. § 951 (1955). The Defeasance Act, as amended, provides:

"No defeasance to any deed for real estate, regular and absolute on its face, made after the passage of this act, shall have the effect of reducing it to a mortgage, unless the said defeasance is in writing, signed and delivered by the grantee in the deed to the grantor; and in so far as it may effect any subsequent grantee or mortgagee of such real estate, for value, unless it is also acknowledged and recorded in the office for the recording of deeds and mortgages in the county wherein the said real estate is situated, before the execution and delivery of such subse-

quent grant or mortgage; and such defeasances shall be recorded and indexed as mortgages by the recorder."

The "defeasance" in this case, the Trust Agreement of March 28, 1960, clearly was "in writing, signed and delivered by the grantee in the deed to the grantor." Plaintiffs contend that the defeasance is nevertheless void because it was not "acknowledged and recorded."

■ Plaintiffs' contention may have had vitality under the original version of the Defeasance Act, but is contrary to the express terms of the Act as amended, which requires acknowledgement and recordation only "in so far as it may effect any subsequent grantee or mortgagee." As is explained in *Ladner on Conveyancing in Pennsylvania,*

"the defeasance ... prior to 1909 ... had to be recorded. Since 1909 ... recording the defeasance is required only if the interest of a subsequent grantee or mortgagee for value is to be affected. This is manifestly more equitable to both parties, for the only one who needs the protection of recording is a subsequent grantee or mortgagee who has given value on the faith of the absolute deed appearing of record. The 1909 amendment has also eliminated the hardship under the previous law when the intended mortgagee took advantage of the omission to comply with the technical requirement that the defeasance be recorded, thus obtaining for himself a fee simple title when he was intended to have only a mortgage."

Vol. II, § 12.11 at pp. 19–20 (rev. 4th ed. 1979) (footnotes omitted). Whatever may have been the rights of "subsequent grantees or mortgagees," plaintiffs thus may not avoid the otherwise proper defeasance for want of acknowledgement and recordation.

Our careful review of the record having convinced us fully that the court of common pleas properly adjudicated the rights and obligations of the parties with respect to all three parcels at issue, the judgment entered in accordance with the court's adjudication must be, and is, affirmed.